Morris Abrams v. Commissioner.
Abrams v. Commissioner
Docket No. 82665.
United States Tax Court
T.C. Memo 1962-190; 1962 Tax Ct. Memo LEXIS 119; 21 T.C.M. (CCH) 1039; T.C.M. (RIA) 62190; August 9, 1962
Abraham Baumgarten, Esq. 400 Madison Ave., New York, N. Y., and I. Robert Rozen, Esq., for the petitioner. Gerald J. Robinson, Esq., for the respondent. RAUM
Memorandum Findings *120 of Fact and Opinion Respondent determined deficiencies in income tax in the amounts of $5,460.38 for the year 1949 and $3,092.42 for the year 1950. The principal issue is whether losses sustained by petitioner as the result of advances to the El Paso Biltmore Corporation and Acme Television Service, Inc., and the payment as guarantor of a bank loan of the latter corporation, were deductible by him as losses sustained in the trade or business of promoting, organizing, financing or lending money to business ventures. Findings of Fact Some of the facts have been stipulated, and, as stipulated, they are incorporated herein by reference. Petitioner, a resident of New York City, filed his income tax returns for the taxable years with the district director of internal revenue, third district, 484 Lexington Avenue, New York City. In 1949 and 1950, petitioner was the president of the Abbott Glass Co., Inc. For his services as president he received from it compensation of $25,000 in 1949 and $30,000 in 1950. Petitioner worked at the Abbott Glass Company each weekday (except Saturday and Sunday) from 6:30 a.m. to 3:00 p.m. He was a bachelor and after hours and on Saturdays and *121 Sundays he had time on his hands. He liked to speculate and in his spare time he participated in some business ventures. In some instances he advanced money needed to start the business, and if more money was required he made additional advances. Some of the ventures were carried on in corporate form, and petitioner acquired a stock interest therein. Petitioner expected his advances to be repaid although in each instance they were placed at the risk of the business. Petitioner's participation in these ventures started in 1932 or 1937 and "practically stopped about ten years ago." During that period he made advances to, and acquired an interest in, the Zetka Television Company, Acme Television Service, Inc., El Paso Biltmore Corporation, Tucson Motel, Saratoga Health Products, Sea Lion Food Products Corporation, Modern Mirror Company, and the Fifth Avenue Drive-In Corporation. Acme Television Service, Inc. was organized in the latter part of 1947 to engage in the business of servicing and repairing television sets, and petitioner became one of its stockholders. In the early part of 1948, he made six loans totalling $4,500 to Harry Kunstler. These were personal loans made for the purpose *122 of enabling Kunstler to purchase an interest in the corporation. Kunstler died in January 1962. Acme Television Service, Inc. engaged in business for a period of about 18 months in 1948 and 1949. During that period petitioner made advances to the corporation with the expectation that they would be repaid. When it ceased to do business in 1949, $6,000 of the advances made to it by petitioner remained unpaid and any right he had to collect this amount became worthless. During the period Acme Television Service, Inc. engaged in business it borrowed money from the Manufacturers Trust Co. and petitioner guaranteed the payment of the loan. In 1949 Acme had no assets and could not pay $3,628.69 borrowed by it. The bank called upon petitioner to make payment, and he paid the bank $3,628.69 during that year. In his income tax return for the year 1949, petitioner claimed a deduction under "Miscellaneous", as follows: Loss in connection with loans to Acme Television Service, Inc., and H. Kunstler. Company out of business. No assets. Loans uncollectible $14,128.68. The $14,128.68 consisted of the following: Loans to Harold Kunstler
$ 4,500.00
Advances to Acme Television
Service Inc.
6,000.00
Payments to Manufacturers
Trust Co. by petitioner as
guarantor on loans made by
the bank to Acme Television
Service Inc.
3,628.68
$14,128.68
*123 In the notice of deficiency for 1949, respondent disallowed the claimed deduction for loans of $4,500 to Harold Kunstler for lack of substantiation. He also determined that the loss of $6,000 sustained by petitioner as a result of his advances to Acme Television Service Inc. constituted a long-term capital loss under the provisions of Sections 23(g) and 117 of the 1939 Code, and that the $3,628.68 paid by petitioner as endorser for loans made by the Manufacturers Trust Company constituted a nonbusiness bad debt deductible as a short-term capital loss under Section 23(k)(4) of the 1939 Code. In the alternative he determined that $9,628.68 of the loss of $14,128.68 claimed by petitioner in his 1949 return constituted a nonbusiness bad debt deductible as a short-term capital loss under Section 23(k)(4). In computing the deficiency for the year 1949 he allowed as a deduction the maximum capital loss deduction of $1,000 provided for in Section 117(d)(2) of the 1939 Code. In his income tax return for 1950 petitioner claimed a deduction under "Miscellaneous" of a loss of $6,066.04. In a schedule attached to his return, this loss was computed as follows: Loss sustained in connection with
loans made to El Paso Biltmore
Corp.
Amount of Loans in Notes
$20,911.82
The property of the El Paso Bilt-
more Corp. was sold in 1950 and
the following is the amount real-
ized on the loans: Cash
$1,759.64
Notes Receivable
7,020.10
Total amount realized
8,779.74
Loss sustained on loans
$12,132.08
1/2 Each reported by George and
Morris Abrams
$ 6,066.04
*124 George Abrams is the brother of petitioner. Petitioner and George made advances to the El Paso Biltmore Corporation, which operated a motel. In 1950 the property of the corporation was sold and the amount realized on the sale was not sufficient to permit the corporation to repay the amounts advanced by petitioner and his brother, as a result of which petitioner sustained a loss of $6,066.04 in that year. In the notice of deficiency for the year 1950, respondent determined that the claimed loss of $6,066.04 in connection with advances made by petitioner to El Paso Biltmore Corporation constituted either a long-term capital loss under the provisions of Sections 23(g) and 117 of the 1939 Code, or a nonbusiness bad debt deductible as a short-term capital loss under Section 23(k)(4) of the 1939 Code. In computing the deficiency for the year 1950 respondent allowed as a deduction the maximum statutory capital loss deduction of $1,000 provided for in Section 117(d)(2) of the 1939 Code. Opinion RAUM, Judge: The parties have stipulated that petitioner made advances of $6,000 to Acme Television Service, Inc.; that in 1949 he as guarantor of loans made by the Manufacturers Trust Company *125 to Acme Television Service, Inc. paid the bank $3,628.68; that he made advances to El Paso Biltmore Corporation; and that any rights petitioner had because of these advances and payments became worthless in the taxable years in which petitioner claimed loss deductions in his returns. They disagree as to the nature of the losses. Petitioner contends that he was engaged in the business of promoting, organizing, financing and managing business enterprises; that the losses were sustained in that business; and that they were business losses deductible in their entirety under the provisions of Section 23(e)(1) or 23(k)(1) of the 1939 Code. Respondent contends that they were either capital losses or losses from nonbusiness bad debts, the deduction of which is limited by the provisions of Section 117(d)(2) of the 1939 Code to the $1,000 which he allowed. Pertinent provisions of the 1939 Code are set forth in the margin. [1]
*126 Petitioner had the burden of proving that the losses were sustained in the business of promoting, organizing, financing and managing business enterprises. He testified that the building in which his records were kept was condemned, that he had to move about seven years ago, and that when he moved his records were lost. In the absence of such records, he attempted to establish by his testimony the business nature of his losses. It discloses that his full-time trade or business consisted of acting as president and manager of the Abbott Glass Company; and that during a period of about 15 or 20 years from 1932 or 1937 to 1952 he participated during his spare time on evenings and weekends in some speculative business enterprises and made advances to them. Although he stated that during the 20-year period he was involved in 40 or 50 ventures, he was able to name only eight. A substantial part of his testimony related to his participation in the Acme Television Service, Inc. and El Apso Bilmore Corporation ventures. The remainder does not disclose the nature or extent of his participation in other ventures, the years in which he made advances to them, or the nature or amount of such advances. *127 When asked how much money in the aggregate he advanced to the ventures in which he participated, he replied he had no way of knowing and that any estimate he made would be only a guess. It is quite apparent from his loose testimony that his investments in most of the ventures in which he participated were solicited by persons who were promoting them. A careful consideration of all the evidence convinces us that over the 15 or 20-year period he participated in and made advances either in the form of loans or capital contributions to a relatively small number of business enterprises, and that this activity was not so extensive during that period or during the taxable years to constitute a trade or business. Cf. (C.A. 2); , affirmed, (C.A. 3); , affirmed, (C.A. 4); (C.A. 5), rehearing denied, - F. 2d - (May 11, 1962); ; ; . *128 See (C.A. 2). Our conclusion is, therefore, and we hold, that petitioner has not sustained his burden of proving that any losses he sustained as the result of any contributions or loans made to the enterprises in which he participated were deductible as business losses. The losses petitioner sustained in 1949 arising out of his capital contributions or loans to Acme Television Service, Inc., and his payment as guarantor of that corporation's bank loan, and in 1950 arising out of his capital contributions or loans to El Paso Biltmore Corporation, were capital losses or losses from nonbusiness debts. In the circumstances, respondent correctly applied the provisions of Sections 23(g)(1), 23(k)(4), and 117(d)(2) of the 1939 Code, supra, when he determined that the maximum deduction to which petitioner is entitled in each of the years 1949 and 1950 for such losses is $1,000. The conclusion reached renders it unnecessary to discuss the issue relating to the worthlessness in the year 1949 of loans made by petitioner to Harry Kunstler because, even if we were to hold that these loans became worthless during that year, the loss *129 would be a short-term capital loss from a nonbusiness debt which would not have the effect of increasing the maximum capital loss deduction of $1,000 allowed by respondent for the year 1949. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) If incurred in trade or business; or * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such a debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *
(3) Definition of securities. - As used in paragraphs (1), (2), and (4) of this subsection the term "securities" means bonds, debentures, notes, or certificates or other evidences of indebtedness, issued by any corporation * * *, with interest coupons or in registered form. (4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(d) Limitation on Capital Losses. - * * *
(2) Other taxpayers. - In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer or $1,000, whichever is smaller. For purposes of this paragraph, net income shall be computed without regard to gains or losses from sales or exchanges of capital assets. * * *↩